IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TEXAS INSTRUMENTS INCORPORATED, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> LINEAR TECHNOLOGY CORPORATION, ) <br> ) <br> Defendant. ) | Civil Action No. 2:01CV004-DF |

**TEXAS INSTRUMENTS' REPLY TO LTC'S MEMORANDUM
REGARDING SECOND *MARKMAN* HEARING**

In its Memorandum (Dkt. No. 69), Linear Technology Corporation ("LTC") attempts to take Texas Instruments Incorporated ("TI") to task, claiming that "TI ignor[ed] the controlling authorities, the requirements of collateral estoppel, due process and the Hyundai Special Master's report itself." (LTC Memo at 1). Nothing could be further from the truth.

First, nowhere in its Opening Memorandum (Dkt. No. 55) does TI assert that LTC is <u>bound</u> by this Court's prior claim construction or that the claim construction is <u>preclusive</u>.[1] In fact, TI plainly stated the opposite: "TI does not contend that the prior claim construction is preclusive or binding on LTC because of collateral estoppel." (TI Memo at 12). LTC obviously overlooked TI's statement on this subject.

Second, the so-called "controlling authorities" relied upon by LTC are collateral estoppel and due process cases concerning whether validity determinations from an earlier action



---

[1] This Court's prior claim construction comes from the action styled *Texas Instruments Incorporated v. Hyundai Electronics Co., Ltd., et al.*, Case No. 2:98CU0074, United States District Court for the Eastern District of Texas, Marshall Division (Heartfield, J.) ("*Hyundai* Action").

CL: 592996v1

are preclusive in a second action. That "authority" has no bearing whatsoever on the issue of law before this Court. TI does not contend that LTC is precluded from contesting the validity of the patents-in-suit. Nor does the mere fact that the jury's validity determination in this action will be based on the Court's claim construction require that this Court reconsider its prior legal determination. Unlike patent validity, which is a jury issue at trial, claim construction is within the exclusive province of the court -- the jury performs absolutely no function in determining the legal meaning of the claim terms. Simply stated, the entire premise of LTC's collateral estoppel/due process argument and its application to validity issues completely misses the mark.

Third, although it contends that the *Hyundai* Special Master failed to consider other intrinsic and extrinsic evidence (LTC Memo at 7-9), LTC does not identify with any specificity a single piece of new evidence (intrinsic or extrinsic) relating to the '674 and '613 patents that should have been considered in the *Hyundai* Action, but was not. That record was complete and included all of the intrinsic evidence (*i.e.* the claims, the specifications and file history). LTC's naked assertion that there is other unidentified extrinsic evidence is not enough to require a second *Markman* hearing. Nor has LTC established the existence of any circumstances under which any such extrinsic evidence would be properly considered. In the absence of any new evidence or showing that extrinsic evidence should have been considered, there is no reason to conduct a second *Markman* hearing.

Fourth, TI did not suggest that a *Markman* hearing was completely unnecessary in respect to the '168 patent. Rather, TI maintains that a *Markman* hearing on the '168 patent need not include terms that have already been interpreted by this Court. To the extent there are new terms in the '168 patent that were not previously construed, TI agrees that a *Markman* hearing so limited in scope would be appropriate.

In short, by adoption of its prior claim construction, this Court will not violate LTC's due process rights or run afoul of the collateral estoppel doctrine. No legitimate purpose would be served in conducting a second *Markman* hearing to consider and review the <u>same</u> evidence to determine the legal meaning of claim terms <u>already</u> <u>interpreted</u> by this Court in an earlier proceeding. And, in the absence of any new evidence, of which none is identified by LTC, this Court can adopt, based on general principles of judicial uniformity and economy, its prior claim construction from the *Hyundai* Action.

## I. COLLATERAL ESTOPPEL ISSUES DO NOT PREVENT THIS COURT FROM ADOPTING ITS PRIOR LEGAL CONSTRUCTION OF CLAIM TERMS

### A. TI Has Not Asserted And Does Not Now Assert That LTC Is Bound Or Precluded Under Collateral Estoppel

TI readily acknowledged in its opening papers that this Court's prior claim construction from the *Hyundai* Action was not preclusive or binding on LTC under the doctrine of collateral estoppel. (*See* TI Memo at 12). LTC ignores this clear statement and launches into a lengthy discussion about collateral estoppel. (LTC Memo at 2-6). In doing so, LTC ignores the strong preference to promote judicial uniformity in claim construction through application of *stare decisis* principles that the United States Supreme Court advanced in its seminal decision in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 391 (1996).

In addition, although it contends that "TI thus errs when it says there is no case precisely on point" (LTC Memo at 4), LTC itself points to no "binding precedent" that squarely addresses whether a court can adopt a prior claim construction in a second case against a second accused infringer. Instead, LTC relies, for the most part, on pre-*Markman* collateral estoppel

decisions that concern patent validity. These cases do not reflect a proper analysis of the *stare decisis* principle in view of the *Markman* decision, let alone discuss claim construction.

Although the Federal Circuit has not directly dealt with this issue, several district courts have considered the effect of a prior claim determination in subsequent litigation since *Markman* was handed down. In particular, courts have addressed whether or not a <u>patentee</u> is bound by a prior claim construction in a second suit against a different defendant. For example, in *TM Patents L.P. v. International Business Machines Corp.*, 72 F. Supp. 2d 370 (S.D.N.Y. 1999), TM (patentee) asserted infringement claims against IBM. The patent claims had been construed by another district court (District of Massachusetts) a year earlier, but the action was settled during trial. In the second action, the court held that the meaning of claim terms from the earlier action was binding on the patentee because the patentee had a full and fair opportunity to litigate the meaning of those claim terms. The court's finding turned on principles of collateral estoppel.[2] In reaching this conclusion, the court recognized that:

> It bears noting that one of the Supreme Court's rationales for upholding the Federal circuit's groundbreaking decision in *Markman* was the promotion of uniformity in the meaning to be given to a patent claim. See *Markman*, 517 U.S. at 390-91. Even prior to *Markman*, the Federal Circuit had held that determination of the scope of a patent claim in a prior infringement action could have collateral estoppel effect against the patentee in a subsequent case. See *Pfaff v. Wells Elec. Inc.*, 5 F.3d 514, 417-18 (1993). After *Markman*, with its requirement that the Court construe the patent for the jury as a matter of law, it is inconceivable that a fully-litigated determination after a first *Markman* hearing would not be preclusive in subsequent actions involving the same disputed claims under the same patent. The nature of the *Markman* proceeding in such that finality is its aim.

---

[2] In contrast, in *Graco Children's Products Inc. v. Regalo Int'l LLC*, 77 F. Supp. 2d 660 (E.D.Pa. 1999), the court held that the patentee was not bound by an earlier claim construction under principles of collateral estoppel.

72 F. Supp. 2d at 377. It bears noting that the Court focused on the "same disputed claims under the same patent," as opposed to the same parties. *See also Abbott Labs. v. Dey, L.P.*, 110 F. Supp. 2d 667, 671 (N.D. Ill. 2000) (court found that patentee was barred under doctrine of issue preclusion from relitigating claim construction in second action against different defendant).

Once again, TI does not contend that the prior claim construction is preclusive or binding on LTC because of collateral estoppel. LTC's reliance upon an analysis of the collateral estoppel doctrine is, therefore, misplaced. Instead, this Court should defer to its earlier ruling and, based on general principles of judicial economy and uniformity, adopt its prior legal construction of claim terms. There is no reason for this Court to rehash or reconsider the same evidence and same arguments.

### B. Collateral Estoppel Cases Involving Prior Determinations Of Validity Are Not Applicable Here

LTC does not take issue -- nor can it -- with TI's statement of legal principles governing claim construction, namely that claim construction involves a question of law reserved **exclusively** for the court. LTC attempts to avoid the clear separation between the court's and jury's functions by equating claim construction with patent validity. In doing so, LTC relies almost entirely upon "due process" and "collateral estoppel" cases concerning patent validity determinations. (LTC Memo at 3-6). The basic rule derived from those decisions is that a judgment of patent validity in one action is not binding in subsequent actions against different defendants. TI's agreement with LTC both begins and ends with that basic point – that a defendant in a second action is not collaterally estopped from challenging a patent previously found to be valid by a factfinder in an earlier case. It does not, however, follow that simply because the validity of a patent must be considered anew by a jury in a subsequent action that the

court is also required to revisit its prior **legal** construction of claim terms. That same legal construction can be submitted to the jury for purposes of determining validity.

By blurring the differences between validity (an issue reserved for the factfinder) and claim construction (a legal issue reserved for the Court), LTC leaps to the conclusion that any determinations necessary to the validity judgment, including claim construction, are not binding. (LTC Memo at 4).[3] That is not the holding in *Blonder-Tongue Labs, Inc. v. University of Ill. Found.*, 402 U.S. 313 (1971), or in the other cases concerning the preclusive effect of a prior invalidity determination. Rather, the overriding concern in each case was whether application of collateral estoppel would interfere with "the need for **independent factfinding** in the second trial." *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1571 (Fed. Cir. 1993) (emphasis added). In this action, the jury will be free to consider any fact evidence (*e.g.*, prior art) and to conduct an independent factfinding function as to the validity of the patents-in-suit. This Court's role in that process is to provide the jury with its claim construction, derived independent of any facts that are to be presented at trial. In making that legal determination, the court is not to consider issues of validity or infringement. *Optical Disc. Grp. v. Del Mar Avionics*, 208 F.3d 1324, 1333 (Fed. Cir. 2000) ("claim scope is determined without regard to the accused devices"); *Smith Indus*, 183 F.3d at 1353 (claims need to be construed prior to validity). In other words, the legal function performed by the court in construing the claims must be kept separate and distinct from the jury's factfinding role in determining validity. LTC ignores this critical distinction.

---

[3] In that regard, LTC also erroneously suggests that this Court will need to consider allegedly invalidating prior art before construing the claims. (LTC Memo at 2). Not so. Claim construction is done independent of any invalidity showing. Once claims are construed to define the scope of the invention, the claimed subject matter is compared to the prior art for purposes of invalidity. *Smith Inds. Medical Sys. Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1353. (Fed. Cir. 1999) ("It is well established that the first step in any validity analysis is to construe the claims of the invention . . .")

Notably, LTC does not even address or attempt to distinguish the cases cited by TI (TI Memo at 8-10) in which courts have adopted a prior legal construction of a statute or contract. And, much like the construction of a contract or statute, the legal construction of the patent claims should be adopted under principles of *stare decisis*. This Court's legal interpretation of the claims cannot be undermined simply because this Court declined to hold a second *Markman* hearing to consider the same evidence.

## II. LTC DOES NOT IDENTIFY ANY ALLEGEDLY "NEW EVIDENCE" THAT WOULD WARRANT A SECOND *MARKMAN* HEARING

### A. LTC's Flawed Analysis Of The Special Master's Report Does Not Establish That This Court Should Hold A Second *Markman* Hearing

LTC's analysis of the Special Master's report from the *Hyundai* Action is similarly flawed. (LTC Memo at 7-10). LTC repeatedly states that the determinations would have been different if it had the "opportunity to contribute evidence and arguments." (LTC Memo at 8). Yet, not once does LTC identify or describe the specific "evidence" that it would have presented, which the Special Master did not consider in the *Hyundai* Action. Instead, LTC merely points to out-of-context comments wherein the Special Master noted the absence of evidence. Many of those comments were simply to point out that Hyundai was unable to identify anything in the record (the patent specification or file history) to support its proposed construction -- not that the evidentiary record was in any way inadequate.

For example, LTC suggests that the Special Master's definition of the claim term "assembly line" is somehow deficient because the parties did not state did not state their positions on what was "the field of invention." (LTC Memo at 8). Immediately following LTC's cropped except, which LTC conveniently left out of its submission, the Special Master stated: "In this case, I believe it to be **indisputable** that the field of invention is the field of

automating manufacturing processes, or portions thereof, through controlling in some automatic fashion one or more operations involved in the manufacturing process. It is in this context that I construe the term 'assembly line.'" (Special Master Report at 8; emphasis supplied). In other words, the legal definition for "assembly line" was based on "indisputable" evidence.

LTC's mischaracterization of the special Master report is further illustrated by reviewing the full and complete record on "sequentially checking" – one of the claim terms addressed in his report. In connection with "sequentially checking," the Special Master, in noting that "[n]o evidence was proferred" by Hyundai, went on to state that: "Hyundai continued to assert that the prosecution history of the '613 patent supported its interpretation. I agree with Texas Instruments that Hyundai is improperly using the specification disclosure and the prosecution history in its attempt to narrow the term's construction." (Special Master Report at 11). The Special Master report does not suggest that the record evidence as to this claim term was deficient. Indeed, in each of the examples referred to in LTC's paper (at 8-9), the Special Master was able to arrive at a claim construction based on the intrinsic evidence.

Likewise, LTC alludes to "extrinsic" evidence but it provides no meaningful description of the purported extrinsic evidence that it would submit in a second *Markman* hearing. Moreover, it would be improper to rely on extrinsic evidence, such as expert and inventor testimony, in construing the claim of the patents-in-suit unless the intrinsic evidence is shown to be "genuinely ambiguous." *Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 189 F.3d 1370, 1375 (Fed. Cir. 1999) ("Often, the intrinsic evidence alone will resolve any ambiguity in a disputed claim term, and, in such instances, reliance on extrinsic evidence is improper.");

*see also Bell & Howell v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Civ. 1997).[4] In that regard, LTC has failed to identify any such ambiguity or to demonstrate how such extrinsic evidence would be admissible or even helpful to this Court in understanding the claim terms.[5]

Where, as in this case, there is no new evidence, this Court should and can adopt its prior claim construction. Indeed, it was a lack of new evidence and arguments that led the court in *KX Industries, L.P. v. Pur Water Purification Products, Inc.*, 108 F. Supp. 2d 380, 387 (Del. 2000), to defer to the earlier claim construction ruling: "While the court's previous opinion does not have issue preclusive effect against [different defendant] in this case, to the extent the parties do not raise new arguments, the court will defer to its previous construction of the claims." So too here. LTC having failed to provide a description of the purported "new evidence," there is no reason for this Court to hold a second *Markman* hearing.

---

[4] It is noteworthy that the Special Master recognized this limitation in the use of extrinsic evidence:

> "[E]xtrinsic evidence may be relied upon to construe claim language only when the intrinsic evidence cannot resolve the ambiguity of a disputed claim or claim term and must not be used to vary or contradict the terms of a claim." *Vitronics*, 90 F.3d at 1583. *See also, Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455, 46 USPQ2d 1169, 1174 (Fed. Cir. 1998) (in banc).

(Special Master Report at 5). No such ambiguity was found to exist and, as such, no extrinsic evidence, other than excerpts from dictionaries, was considered. LTC, moreover, has failed to identify any such ambiguity.

[5] LTC also contends that the claim construction is in error in view of the Federal Circuit's rulings in *SeiMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir. 2001) and *Watts v. XL Sys, Inc.*, 232 F.3d 877 (Fed. Cir. 2000). (LTC Memo at 6). Those two cases do not, as LTC suggests, reflect any departure from the basic rules of construction set out in *Markman* that "[c]laims must be read in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979-980. Moreover, those two decisions involved specifications in which the "preferred embodiment" was described as the invention itself -- which is not the case here.

### B. The Prosecution History Of The '168 Patent Is Not "New Evidence" To Be Used In Construing The Claims Of The '674 And '613 Patents.

LTC's apparent assertion that the prosecution history of the '168 patent is "new evidence" that should be used by this Court to reconstrue the claim terms of the '674 and '613 patent is flatly wrong. (LTC Memo at 10). LTC provides no authority for this premise, and its reliance on *Biovail Corp. Int'l v. Andrx Pharms., Inc.,* and *Elkay Mfg. Co. v. Ebco Mfg. Co.,* is misplaced. Both *Biovail Corp. Int'l* and *Elkay Mfg. Co.* address the use of the prosecution history of an <u>earlier</u> filed application to determine the meaning of <u>later</u> issued patents which contain the same claim limitations. Contrary to LTC's suggestion, these cases do not provide guidance on the relevance of prosecution histories of <u>later</u> filed applications to <u>earlier</u> issued patents.

Indeed, it would be improper for this Court to rely on definitions and descriptions found in the '168 patent in order to construe the terms of the '674 and '613 patents. *See Schering Corp. v. Amgen Inc.*, 18 F. Supp.2d 372, 380 , n. 15 (D. Del. 1998). It is axiomatic that the meaning of claim language must be determined by what one skilled in the art would have understood the claim to mean at the time the application containing the claim was originally filed. *See Weiner v. NEC Electronics*, 102 F.3d 534, 539 (Fed. Cir. 1996). The '674 patent, which was filed on January 30, 1985, and the '613 patent, which was filed on August 12, 1992, both issued before the '168 patent was filed on June 7, 1995. At best, the prosecution history of the '168 patent represents extrinsic evidence "which is disfavored during claim construction analysis." *Schering Corp.*, 18 F. Supp.2d at 380, n. 15; *see also Epic Metals Corp. v. Consolidated Sys., Inc.* 19 F. Supp. 2d 1296, 1303 (M.D. Fla. 1998) (court rejected attempts to rely on continuation application to construe patent claims).

Accordingly, LTC's reliance upon the prosecution history of the '168 patent, which was filed more than two years after the '674 and '613 patents issued, as "new evidence" to ascertain the meaning of the claim terms in these earlier patents should be rejected.

### III. TI PREVIOUSLY ACKNOWLEDGED THE POSSIBLE NEED TO HOLD A *MARKMAN* HEARING LIMITED IN SCOPE TO DISPUTED CLAIMS TERMS OF THE '168 PATENT

TI has never asserted that a *Markman* hearing should not be held to determine the scope of any disputed and previously unconstrued terms of the '168 patent. Indeed, in its earlier papers, TI invited this Court to adopt the prior construction of the claims of the '674 and '613 patents in order to insure certainty and uniformity with this Court's previous interpretation. To the extent there are disputed terms in the '168 patent that were not previously construed by this Court and/or new evidence, TI agrees that a *Markman* hearing so limited in scope would be appropriate. However, a *Markman* hearing on the '168 patent need not include terms that have already been interpreted by this Court.

### CONCLUSION

This Court need not reinvent the wheel by reinterpreting claim terms in the patents-in-suit. It has previously considered the relevant intrinsic evidence (*i.e.*, the claims, the specification and file history) and made a legal determination, based on that intrinsic evidence, with respect to certain claim terms of the '674 and '613 patents. A second *Markman* hearing to hear the same evidence with respect to those same claim terms is not required or necessary. Nor do principles of collateral estoppel and due process mandate that this Court conduct a second *Markman* hearing. In the absence of any new evidence, this Court is free to adopt its prior legal construction of claim terms, and should do so in this case.

Dated: June 1, 2001

Respectfully submitted,

*Carl Roth* (signature)

Carl R. Roth
State Bar No. 17312000
LAW OFFICES OF CARL R. ROTH
111 West Austin
P.O. Box 876
Marshall, Texas 75761-1249
Telephone: 903-935-1665
Facsimile: 903-935-1797

Kenneth R. Adamo
State Bar No. 00846960
Mark N. Reiter
State Bar No. 16759900
JONES, DAY, REAVIS & POGUE
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
Telephone: 214-220-3939
Facsimile: 214-969-5100

OF COUNSEL:

JAY C. JOHNSON
Richard R. Andrews
TEXAS INSTRUMENTS INCORPORATED
P.O. Box 655474
Mail Station 3999
Dallas, Texas 75265
Telephone: 972-917-5557
Facsimile: 972-917-4418

Attorneys For Plaintiff
Texas Instruments Incorporated

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been forwarded to all attorneys of record herein by facsimile transmission and by certified mail, receipt requested on this 1st day of June, 2001.

Lance Lee
Young & Pickett
P.O. Box 1897
Texarkana, TX-AR 75504

Laurence S. Rogers
Fish & Neave
1251 Avenue of the Americas
New York, NY 10020

Mr. Jeffrey G. Randall
Cooley Godward
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155

Nicholas H. Patton
Patton & Tidwell, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398

Dan K Webb
Winston & Strawn
35 W. Wacker Dr.
Chicago, IL 60601

Donald Dean Bush
Bush, Craddock & Reneker LLP
3100 Monticello Ave., Ste. 550
Dallas, TX 75205-3442

Morgan Chu
Irell & Manella, LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

_____
Of Counsel